UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 3:13CV545 |
| | : | |
| $822,694.81 IN UNITED STATES CURRENCY, SEIZED FROM ACCOUNT NO. XXXXXXXX7424, HELD IN THE NAMES OF GODWIN EZEEMO AND WINIFRED C. N. EZEEMO, AT BANK OF AMERICA, | : : : : : : | |
| | : | |
| Defendants. | : | April 17, 2013 |
| | : | |
| [CLAIMANT: GODWIN EZEEMO AND WINIFRED C. N. EZEEMO] | : : | |

VERIFIED COMPLAINT OF FORFEITURE

The plaintiff, United States of America, by and through its attorney, David B. Fein, United States Attorney for the District of Connecticut, and John B. Hughes, Chief of the Civil Division, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**NATURE OF THE ACTION**

1. This is an action to forfeit and condemn to the use and benefit of the United States of America the following property: $822,694.81 in United States currency, seized from Account No. XXXXXXXX7424, held in the names of Godwin Ezeemo and Winifred C. N. Ezeemo, at Bank of America (BOA Account), for violations of 18 U.S.C. §§ 1343 or 1956(a)(1)(A)(i).

## THE DEFENDANT IN REM

2.      The Defendant is $822,694.81 in United States currency, seized from Account No. XXXXXXXX7424, held in the names of Godwin Ezeemo and Winifred C. N. Ezeemo at Bank of America, and is currently in the custody of the United States Secret Service.

## JURISDICTION AND VENUE

3.      Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant Currency.  This Court has jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345, and over an action for forfeiture pursuant to 28 U.S.C. § 1355(a).

4.      This Court has *in rem* jurisdiction over the Defendant Currency pursuant to 28 U.S.C. 1355(b).  Upon the filing of this complaint, the plaintiff requests that the Court issue arrest warrants *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the Defendant Currency pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5.      Venue is proper in this district pursuant to 28 U.S.C. §1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395, because the property is located in this district.

## BASIS FOR FORFEITURE

6.      The Defendant Currency is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it constitutes property involved in a financial transaction in violation 18 U.S.C. § 1956(a)(1)(A)(i), or pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)), namely wire fraud in violation of 18 U.S.C. § 1343, or conspiracy to commit such offense.

## FACTS

### FRAUD AGAINST CW-1 AND CW-2

7.  The United States Secret Service began an investigation after receiving information from a cooperating witness ("CW-1"), who was a victim of an online dating/fraud scam.  As explained below, the perpetrator established an online relationship with CW-1, feigned interest in a long term romantic relationship, and manipulated CW-1 both to send money and to move money, unwittingly facilitating the perpetrator's fraud scheme.

8.  At all times pertinent times, CW-1 resided and worked in Connecticut.  The online relationship began sometime prior to December 2010.  The perpetrator identified himself as "Kaleb Johnson," claimed to be traveling overseas, and requested CW-1 to send him money via Western Union and MoneyGram.  CW-1 complied, periodically wiring money to Johnson as requested, amounting to a total of about $16,000.

9.  In or about September 2011, Johnson advised CW-1 that he wanted to deposit about $10,000 into CW-1's bank account, which was held at Citizens Bank ("CB").  CW-1 provided Johnson with the CB account number and other information to facilitate the deposit.  On September 19, 2011, $9,950  was deposited into CW-1's account, after which Johnson directed CW-1 to withdraw $9,000 and deposit it into Bank of America ("BOA") account no. XXXXXXXX7424 (the "BOA account") CW-1 did as Johnson instructed, believing him/herself to be helping Johnson pay his bills.  To carry out the transfer, CW-1 withdrew the funds in the form of cash from a Connecticut CB branch, then drove to New York and deposited the funds at a New York BOA branch.  Prior to making the funds transfer, CW-1 had been physically located

in Connecticut while receiving and responding to Johnson's electronic messages that requested and instructed CW-1 about the transfer.

10. After making the transfer, CW-1 was notified by a CB fraud investigator that the $9,950 deposited into CW-1's account had been fraudulently transferred from a CB account belonging to a victim residing in Massachusetts, hereinafter CW-2. CW-2 was defrauded after receiving a fictitious email purportedly from CB, warning of suspicious activity in CW-2's CB account. CW-2 responded to the email, following its instructions to click on to a website that appeared to be the legitimate CB website. In fact, however, the website was a fraudulent imitation of the actual CB website. CW-2, believing the website to be the actual secure CB website, entered his/her online CB username, password and other secure information. CW-2's account was thereafter accessed by unknown perpetrators resulting in the fraudulent transfer of $9,950 from CW-2's CB account to CW-1's CB account.

11. The investigation revealed that "Kaleb Johnson" instructed CW-1 to transfer funds that came into CW-1's account from CW-2's account to BOA account no. XXXXXXXX7424. Investigators obtained the records for the BOA account and learned that the BOA account was opened in the state of Florida by Godwin Ezeemo and Winifried C. N. Ezeemo, both identified as Nigerian-born citizens and resident of the United Kingdom. The deposit records for the BOA account also allowed the investigators to identify several other fraud victims whose funds were deposited into the BOA account.

**FRAUD AGAINST CW-3**

12. Between July 2011 and October 2011, several deposits totaling $510,000 were wired into the BOA account from bank accounts belonging to another victim of an online

dating/fraud scam, hereinafter CW-3.  CW-3 resided in Texas, and in or about July 2011 commenced an online relationship with a person known to CW-3 as "Solerno Joan."  Joan claimed to be a resident of the UK, so CW-3 and Joan communicated via Email.  Joan claimed to be experiencing various financial hardships and began asking CW-3 to send her money via Western Union and MoneyGram.  CW-3 complied, periodically wiring money to Joan as requested, amounting to a total of about $15,500 of CW-3's own money.

13.     Joan then informed CW-3 that she had inherited $60 million and wanted to move to the United States, marry CW-3, and share her inheritance.  However, CW-3 first would have to pay "fees" to help Joan obtain the inheritance.  CW-3 wired a total of $1.7 million from his/her personal savings as directed by CW-3:  $510,000 in such "fees" were wired to the BOA account, and the remaining $1.2 million was wired to other accounts as directed by Joan.  Since that time. Joan has neither come to the United States, shared any "inheritance" with CW-3, nor returned any of the wired money to CW-3.

### FRAUD AGAINST WEYCER, KAPLAN, PILASKI AND ZUBER

14.     On or about February 7, 2012, a Texas law firm known as Weycer, Kaplan, Pilaski and Zuber (the "law firm") was duped into wiring a large sum of money into the BOA account.  The fraud began in February 2012, when the law firm was solicited via email by a purported mortgage broker who claimed a mortgagee/borrower had defaulted on a $725,000 construction loan.  The broker requested representation from the law firm.  The law firm received a Citibank check payable to the firm in the amount of $195,340, which the purported mortgage broker represented to be a partial payment of the defaulted loan.  The purported mortgage broker accompanied the check with an email instructing the law firm to keep $1,000 of the check

5

proceeds as payable for services provided, and to wire the remaining $194,340 to the BOA account.  The law firm wire transferred the funds to the BOA account after first depositing the check into its AmgyBank business account.  The check was returned to the business account with the notation "unable to locate account" and the firm's bank account was debited $195,340.

## FRAUD AGAINST CW-4

15. Another fraud victim who wired funds into the BOA account, hereinafter CW-4, received a midnight phone call in September 2011 by a person who CW-4 believed to be his/her stepson.  The "stepson" claimed that he was overseas, needed $4,000 in an emergency, and provided CW-4 with the BOA account information to facilitate a wire transfer.  On September 15, 2011, CW-4 wired the $4,000 into the BOA account as instructed.  CW-4 later learned that his/her stepson had been in the United States at the time, did not make the telephone call, and did not request or receive the $4,000.  CW-4 never received any of the $4,000 back.

## FRAUD AGAINST CW-5

16. Another victim who wired funds into the BOA account, hereinafter CW-5, was a resident of North Carolina defrauded in an advance fee scam.  CW-5 was in contact with certain purported "lawyers," who advised that CW-5 was eligible to receive a substantial amount of money, but that CW-5 first would have to pay "fees" before receiving a payment check.  As instructed by the purported lawyers, CW-5 made two deposits to the BOA account on September 21 and 27, 2011, totaling $21,500, all from CW-5's personal savings.  CW-5 never received any check or other funds from the "lawyers."

## FRAUD AGAINST BANK OF NEW CANAAN

17. Beginning on or about March 8, 2012, Bank of New Canaan ("BNC") in New Canaan, Connecticut received a number of email messages supposedly from Michael Buzzeo, the accountant for New Canaan Lumber Company/Racquet Club ("NCLC/RC"), which is a customer of Bank of New Canaan.  As instructed through these email messages, BNC provided account balances and account numbers for NCLC/RC accounts to the person they believed was Michael Buzzeo.  Further, as directed through these emails, BNC complied with four requests to wire funds, totaling $478,414.38 from the NCLC/RC account to four non-BNC bank accounts.  As a result of one of the four requests, $154,210.86 was wired to the BOA account.  It was subsequently discovered that neither Michael Buzzeo, nor anyone from NCLC/RC, sent the emails to BNC.  Further, it was learned that neither Michael Buzzeo nor NCLC/RC authorized the wire transfers executed by BNC.

## FRAUD AGAINST CW-6

18. On March 15, 2012, CW-6 wired $40,000 into the BOA account.  CW-6 resided in Ohio, and on March 14, 2012 received an instant message from "Jimmy Kelley" who purportedly worked for "Deaf Lottery Association."  Kelly informed CW-6, who is deaf, that he/she had won $750,000 in a lottery and would have to pay $40,000 in "fees" to receive the winnings.  After CW-6 wired $40,000 as instructed, Kelly requested CW-6 for more money and CW-6 realized he/she was involved in a scam.  CW-6 never received any "winnings" from the "lottery."

## TRACING OF FRAUD PROCEEDS INTO BOA ACCOUNT

19.     To date, the investigation has traced proceeds of wire fraud into the BOA account in the total amount of $933,050.86, cumulated as follows:

| VICTIM | FRAUD LOSS TRANSFERRED INTO BOA ACCOUNT |
| --- | --- |
| CW-1 | $ 9,000.00 |
| CW-3 | $510,000.00 |
| CW-4 | $ 4,000.00 |
| CW-5 | $ 21,500.00 |
| CW-6 | $ 40,000.00 |
| Weycer, Kaplan, Pilaski and Zuber | $194,340.00 |
| Bank of New Canaan | $154,210.86 |
| TOTAL | $933,050.86 |

20.     For the two year period between March 2010 and March 2012, the BOA account records showed an activity pattern consisting of three separate, concentrated cycles of cash deposits being made to the account. Each of the three deposit cycles lasted two to three months, each totaled approximately $100,000 or more, and all were separated by longer periods of very low cash deposit activity. All deposits in those three concentrated cycles were made in person at BOA branches, in several different states. As discussed below, each of the three concentrated deposit cycles is consistent with the fraud activity described herein.

21.     The most recent cash deposit cycle occurred between August and October 2011, consisting of 16 deposits totaling $134,759, made in several states including Connecticut, New York, Massachusetts, Pennsylvania, New Hampshire, Maryland, North Carolina, Illinois,

California and Washington.  Three of those 16 deposits, totaling $30,500, have already been documented above as fraud, namely:

    a.      One deposit by CW-1 for $9,000, on September 19, 2011 (see paragraphs 9-10, above); and

    b.      Two deposits by CW-5 totaling $21,500, on September 21 and 27, 2011 (see paragraph 16, above).

22.      The remaining 13 deposits in the cycle total $104,259.  Investigating agents have not yet been able to identify and/or locate and interview the individuals who made those 14 deposits to the BOA account.  However, based on the three known fraud deposits in this cycle as discussed above, the documented use of the BOA account as a depository for more than $900,000 in fraud proceeds, and the similarity of the other 13 deposits' pattern and timing to the three documented fraud deposits, supports the conclusion that those other 13 deposits are also proceeds of fraud.

23.      The next previous cash deposit cycle occurred between February and April 2011, consisting of 42 cash deposits totaling $314,500, made at BOA branches in several states including California, Oregon, Michigan, Georgia, New York, New Jersey and Maryland.  Investigating agents have not yet been able to identify and/or locate and interview the individuals who made those 42 deposits to the BOA account.  However, based on the facts set forth in paragraph 19 above, and the similarity of the pattern and timing of this deposit cycle to the more recent deposit cycle discussed in paragraphs 21-23 above, investigators believe that the 42 cash deposits made between February and April 2011 and totaling $314,500 are also proceeds of fraud.

24.     The earliest of the three cash deposit cycles occurred between March and April 2010, consisting of 26 cash deposits totaling $93,000, made at BOA branches in New York and New Jersey.  Investigating agents have not yet been able to identify and/or locate and interview the individuals who made those 26 deposits to the BOA account.  However, based on the facts set forth in paragraph 19 above, and the similarity of the pattern and timing of this deposit cycle to the more recent deposits discussed in paragraphs 21-23 above, supports the conclusion that the 26 cash deposits made between March and April 2010 and totaling $93,000 are also proceeds of fraud.

25.     The investigation to date had identified a total of $933,050.86 in documented proceeds of wire fraud into the BOA account.  As discussed in paragraphs 21-24 above, the investigation has identified an additional total of $542,259 in deposits to the BOA account, consisting the sum of the following three, separate cycles of concentrated cash deposit activity:

| CYCLE PERIOD | NUMBER OF DEPOSITS | TOTAL AMOUNT |
| --- | --- | --- |
| **March-April 2010** | 26 | $93,000.00 |
| **February-April 2011** | 42 | $314,500.00 |
| **August-October 2011** | 16 | $134,759.00 |
| **TOTALS** | 82 | $542,259.00 |

26.     On March 23, 2012, the United States District Court for the District of Connecticut issued a seizure warrant for proceeds up to the amount of $1,250,599 in Account No. XXXXXXXX7425, held in the names of Godwin Ezeemo and Winifred C. N. Ezeemo, at Bank of America.  On March 23, 2012, Special Agents of the United States Secret Service seized the

Defendant, $822,694.81 in Account No. XXXXXXXX7425, held in the names of Godwin Ezeemo and Winifred C. N. Ezeemo, at Bank of America, pursuant to the warrant.

## CONCLUSION

27. The Defendant Currency was seized by the United States Secret Service on March 23, 2012, pursuant to 18 U.S.C. § 981(a)(1)(A) or (C), because it was involved in a transaction or attempted transaction, or traceable thereto, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), or which represents property which constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)), namely wire fraud in violation of 18 U.S.C. § 1343, or conspiracy to commit such offense.

WHEREFORE, the United States of America prays that a Warrant of Arrest In Rem be issued for the Defendant, $822,694.81 in Account No. XXXXXXXX7425, held in the names of Godwin Ezeemo and Winifred C. N. Ezeemo, at Bank of America, that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the property to be condemned and forfeited to the United States of America for

disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

    Respectfully submitted,

    DAVID B. FEIN
    UNITED STATES ATTORNEY


    */s/ John B. Hughes*
    JOHN HUGHES
    CHIEF CIVIL DIVISION


    */s/ Julie G. Turbert*
    JULIE G. TURBERT
    ASSISTANT U.S. ATTORNEY
    ATTORNEY BAR # ct23398
    157 CHURCH STREET
    NEW HAVEN, CT  06510
    TELEPHONE:  (203) 821-3700
    FAX: (203) 773-5373
    EMAIL:  Julie.Turbert@usdoj.gov

DECLARATION

I am a Special Agent with the United States Secret Service, and the agent assigned the responsibility for this case.

I have read the contents of the foregoing Verified Complaint of Forfeiture and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 16th day of April, 2013

       /s/ Michael Shove
MICHAEL SHOVE
SPECIAL AGENT
UNITED STATES SECRET SERVICE