UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
-----------------------------------------------------------x
UNITED STATES OF AMERICA,                :
                                         :
              Plaintiff                  :   Civil No. 3:13-cv-545 (RNC)
                                         :
        -against-                        :
                                         :
$822,694.81 IN UNITED STATES CURRENCY,   :
SEIZED FROM ACCOUNT NO. XXXXXX7424,      :
HELD IN THE NAMES OF GODWIN EZEEMO       :
AND WINIFRED C. N. EZEEMO, AT BANK OF    :   June 13, 2013
AMERICA                                  :
                                         :
              Defendants.                :
                                         :
[CLAIMANT: GODWIN EZEEMO AND             :
WINIFRED C. N. EZEEMO]                   :
-----------------------------------------------------------x
```

### VERIFIED ANSWER OF CLAIMANTS GODWIN EZEEMO AND WINIFRED C. N. EZEEMO

Claimants GODWIN EZEEMO ("Godwin") and WINIFRED C. N. EZEEMO ("Winifred") (collectively "Claimants"), by their attorneys, Okechukwu Valentine Nnebe, and pursuant to pursuant to Rule G (5)(b) of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions hereby answer the verified complaint for forfeiture as follows:

### NATURE OF ACTION

1.  Claimants admit that this is an *in rem* action for forfeiture of $822,694.81 in United States currency, seized from account No. xxxxxxxx7472, held in the names of Claimants at Bank of America ("BOA Account") as alleged in Paragraph 1 of the Verified Complaint, but denies that the United States of America has any right to proceed against the BOA Account pursuant to the statutes invoked in this paragraph because Claimants denies that the BOA Account is the proceeds of any illegal activity and demands strict proof thereof.

**THE DEFENDANT IN REM**

2. Claimants are without sufficient knowledge of the approximate total amount of funds seized and/or frozen from BOA Account held in Claimants' names. Claimants are aware and admit that the BOA Account have been frozen and/or seized by Plaintiff. Claimants are without knowledge regarding the status of the BOA Account.

**JURISDICTION AND VENUE**

3. Claimants assert that the allegation in Paragraph 3 of the Verified Complaint is a legal conclusion to which no response is required. To the extent the Court requires a response, Claimants deny that this Court has jurisdiction over this action in order to preserve all appropriate defenses.

4. Claimants assert that the allegation in Paragraph 4 of the Verified Complaint is a legal conclusion to which no response is required. To the extent the Court requires a response, Claimants assert that the statutes referenced in Paragraph 4 speak for themselves and therefore the allegations are denied.

5. Claimants assert that the allegation in Paragraph 5 of the Verified Complaint is a legal conclusion to which no response is required. To the extent the Court requires a response, Claimants deny that acts or omissions giving rise to forfeiture occurred in this district and, therefore, deny that venue is proper in this district.

**BASIS FOR FORFEITURE**

6. Claimants deny the allegations in Paragraph 6 of the Verified Complaint.

**FACTS**

**FRAUD AGAINST CW-1 AND CW-2**

7. Claimants are without knowledge to form a belief as to the truth of the allegations contained in Paragraph 7 of the Verified Complaint and therefore deny all allegations contained therein, and demands strict proof thereof.

8. Claimants are without knowledge to form a belief as to the truth of the allegations contained in Paragraph 8 of the Verified Complaint and therefore deny all allegations contained therein, and demands strict proof thereof.

9. Claimants are without knowledge to form a belief as to the truth of the allegations contained in Paragraph 9 of the Verified Complaint and therefore deny all allegations contained therein, and demands strict proof thereof.

10. Claimants are without knowledge to form a belief as to the truth of the allegations contained in Paragraph 10 of the Verified Complaint and therefore deny all allegations contained therein, and demands strict proof thereof.

11. Except admit that the BOA Account was opened by Claimants in the State of Florida, Claimants are without knowledge to form a belief as to the truth of the allegations contained in Paragraph 11 of the Verified Complaint and therefore deny all allegations contained therein, and demands strict proof thereof.

### FRAUD AGAINST CW-3

12. Claimants are without knowledge to form a belief as to the truth of the allegations contained in Paragraph 12 of the Verified Complaint and therefore deny all allegations contained therein, and demands strict proof thereof.

13. Claimants are without knowledge to form a belief as to the truth of the allegations contained in Paragraph 13 of the Verified Complaint and therefore deny all allegations contained therein, and demands strict proof thereof.

### FRAUD AGAINST WEYCER, KAPLAN, PILASKI AND ZUBER

14. Claimants are without knowledge to form a belief as to the truth of the allegations contained in Paragraph 14 of the Verified Complaint and therefore deny all allegations contained therein, and demands strict proof thereof.

### FRAUD AGAINST CW-4

15. Claimants are without knowledge to form a belief as to the truth of the allegations contained in Paragraph 15 of the Verified Complaint and therefore deny all allegations contained therein, and demands strict proof thereof.

### FRAUD AGAINST CW-5

16. Claimants are without knowledge to form a belief as to the truth of the allegations contained in Paragraph 16 of the Verified Complaint and therefore deny all allegations contained therein, and demands strict proof thereof.

### FRAUD AGAINST BANK OF NEW CANAAN

17. Claimants are without knowledge to form a belief as to the truth of the allegations contained in Paragraph 17 of the Verified Complaint and therefore deny all allegations contained therein, and demands strict proof thereof.

### FRAUD AGAINST CW-6

18. Claimants are without knowledge to form a belief as to the truth of the allegations contained in Paragraph 18 of the Verified Complaint and therefore deny all allegations contained therein, and demands strict proof thereof.

### TRACING OF FRAUD PROCEED INTO BOA ACCOUNT

19. The allegations of Paragraph 19 of the Verified Complaint, to the extent it purports to allege that the BOA Account is the proceeds of any illegal activity or that Claimants were aware of any illegal activity or that the BOA Account was opened or used by Claimants to facilitate any illegal activity, are denied and strict proof is demanded thereof.

20. The allegations of Paragraph 20 of the Verified Complaint, to the extent it purports to allege that the BOA Account is the proceeds of any illegal activity or that Claimants were aware of any illegal activity or that the BOA Account was opened or used by Claimants to facilitate any illegal activity, are denied and strict proof is demanded thereof.

21. Claimants are unaware of the facts alleged herein and are thus not in a position to deny or admit the allegations in Paragraph 21 of the Verified Complaint. In further answer thereto, the

allegations of Paragraph 21 of the Verified Complaint, to the extent it purports to allege that the BOA Account is the proceeds of any illegal activity or that Claimants were aware of any illegal activity or that the BOA Account was opened or used by Claimants to facilitate any illegal activity, are denied and strict proof is demanded thereof.

22. The allegations of Paragraph 22 of the Verified Complaint, to the extent it purports to allege that the BOA Account is the proceeds of any illegal activity or that Claimants were aware of any illegal activity or that the BOA Account was opened or used by Claimants to facilitate any illegal activity, are denied and strict proof is demanded thereof.

23. Claimants are unaware of the facts alleged herein and are thus not in a position to deny or admit the allegations in Paragraph 23 of the Verified Complaint. In further answer thereto, the allegations of Paragraph 23 of the Verified Complaint, to the extent it purports to allege that the BOA Account is the proceeds of any illegal activity or that Claimants were aware of any illegal activity or that the BOA Account was opened or used by Claimants to facilitate any illegal activity, are denied and strict proof is demanded thereof.

24. Claimants are unaware of the facts alleged herein and are thus not in a position to deny or admit the allegations in Paragraph 24 of the Verified Complaint. In further answer thereto, the allegations of Paragraph 24 of the Verified Complaint, to the extent it purports to allege that the BOA Account is the proceeds of any illegal activity or that Claimants were aware of any illegal activity or that the BOA Account was opened or used by Claimants to facilitate any illegal activity, are denied and strict proof is demanded thereof.

25. Claimants are unaware of the facts alleged herein and are thus not in a position to deny or admit the allegations in Paragraph 25 of the Verified Complaint. In further answer thereto, the allegations of Paragraph 25 of the Verified Complaint, to the extent it purports to allege that the BOA Account is the proceeds of any illegal activity or that Claimants were aware of any illegal activity or that the BOA Account was opened or used by Claimants to facilitate any illegal activity, are denied and strict proof is demanded thereof.

26. Claimants admit that the BOA Account was seized pursuant to a warrant issued by this Court. Claimants are without knowledge to form a belief as to the truth of the allegations contained in Paragraph 26 of the Verified Complaint and therefore deny all allegations contained therein, and demands strict proof thereof.

## CONCLUSION

27. Claimants admit that the defendant currency was seized as alleged. Claimants deny the other allegations in Paragraph 27 of the Verified Complaint and demand strict proof thereof. Claimants deny all conspiracy allegations contained in Paragraph 27 of the Verified Complaint. In further answer thereto, Claimants state that the BOA Account was never opened or used for any unlawful or illegal activity, or to facilitate any unlawful or illegal activity, and that Claimants have no knowledge of any unlawful or illegal activity relating to the BOA Account.

The remainder of the Verified Complaint, beginning with the word "WHEREFORE" constitutes a prayer for specific relief to which no answer is required. To the extent a response is appropriate, Claimants deny that the relief requested is proper or justified by the facts of this case.

## FURTHER ANSWER TO THE COMPLAINT

28. In further answer to the Verified Complaint, Claimants state as follows:

## THE CLAIMANTS

29. Claimants are husband and wife, having been married since 1991, and are dual Nigerian and British Citizens. Claimants are accomplished and successful business people through honest hard work over the years, having been in active business for over thirty (30) years with a net current worth in excess of $20,000,000.00.

## CLAIMANTS BUSINESS INTERESTS

30. Claimants are engaged in vast business interests, including importation from Europe, United States, China and Asia of equipments, machinery and merchandise for sale in most African

countries, including but not limited to the importation and sales of agricultural equipments and machinery; transportation and haulages; importation and sales of electronics and electrical materials importation and sales of clothing materials and textiles; agriculture and farming; industrial projects; newspaper and magazine publishing; water purification; and international shipping and forwarding services.

31. In addition to using their personal names, Claimants owned several legitimate and operational corporations through which Claimants conduct their businesses in several countries, such as in Britain, Nigeria, Ghana, Cameroon, Gabon, Uganda, Cote D'Ivoire, Togo, Sierra Leone, Central African Republic, and all of West African Countries.

32. Some of Claimants legitimate corporate businesses includes: (a) Sokka International SARL, a Cote D'Ivoire corporation since 1993, (b) Orient Export Limited, a British corporation since 1995 and a member of the British International Freight Association (BIFA), at orientsealand.com, (c) Union Haulage Limited, a Nigerian corporation since 1993, (d) Kumasi Agricultural Tool & Accessories Limited, a Ghana corporation since 2007, (e) Sokka International Ent. Ltd., a Nigerian corporation since 2008, (f) Orient Merchants SAR, a Republic of Togo corporation, since 2008, (g) Orient Magazine Newspapers Communication Limited, publishers of Nigerian Orient News and Magazine, at nigerianorientnews.com, and (h) Orient Feed Mills and Farm.

33. Claimants purchase machineries, goods, and equipment from manufacturers in several countries, including the United States, Britain, Ireland, China, Slovania, and Sweden for sale in African countries. Claimants maintain business interests, offices, and staffs in several African countries and in Britain. Claimants and employs over 200 permanent employees and several hundred temporary staffs in their offices in Nigeria, Ghana, Cameroon, Gabon, Uganda, Cote D'Ivoire, Togo, Sierra Leone, and Central African Republic alone.

### **CLAIMANTS PURCHASES FROM THE UNITED STATES**

34. Since in or about 1995 Claimants, through their corporations, Sokka International and Orient Export Limited, has been the *sole and exclusive distributor* in Nigeria, Ghana, Cameroon,

7

Gabon, Uganda, Cote D'Ivoire, Togo, Sierra Leone, Central African Republic, and all of West African countries for the Carlton Company (now Blount International, Inc), a United States manufacturing corporation located in Oregon, and manufacturers of saw chain and guide bars for chain saws; replacement parts, equipment, and accessories for forestry, lawn, garden, farm, ranch, and agriculture, and concrete cutting and finishing equipments.

35. Claimants purchase, distribute and sale Carlton Company products such as saw chain and accessories, AET ignition components, garden equipments, general hard wares, replacement parts, equipment, and accessories for the forestry, lawn, garden, farm, ranch, and agriculture, and concrete cutting, landscaping and finishing equipments, etc.  In 2008, the Carlton Company was purchased by Blount International, Inc., a U.S. global corporation with its head office located at 4909 SE International Way, Portland, OR 97222.

36. During the course of their business from 2010 to March 2013, Claimants have purchased products from Carlton Company, now Blount International, worth nearly $23,000,000.00 (excluding shipping costs) in the United States, for distribution and sale in Nigeria, Ghana and Cote D'Ivoire alone (and excluding other African countries), made up as follows:

(a) As at 3/6/13 - $1,636,365.21;

(b) 2012 - $5,725,624.60;

(c) 2011- $8,441,457.90; and

(d) 2010 - $7,065,743.00;

37. In addition, during the same period Claimants purchased machinery, equipments, clothing and textile materials, automobile parts and repair kits from other reputable international companies such as Tillotson in Ireland, Hidria in Slovania, and Hong Liang Engineering in Singapore worth several millions of dollars, for distribution and sale in Africa.

38. Claimants first ship the purchased products from USA, Europe and Asia to their company Orient Export Limited, a British shipping and forwarding service corporation and member

of the British International Freight Association.  Thereafter, Claimants will consolidate the products and ship to their companies for distribution and sale in respective African countries.

## CLAIMANTS' PURCHASES OF FOREIGN CURRENCY

39. Upon sale of the products in Africa, Claimants will purchase pounds sterling, Euro, dollar or other foreign currency and wire same to their accounts overseas for further purchases of more products.  Claimants purchase and wire of foreign currency from the Nigerian Autonomous Foreign Exchange Market, either through the banks as authorized foreign exchange dealers or through non-bank organizations or persons as authorized foreign exchange buyers ("Buyers"), and Claimants has paid in local currency for each and every foreign currency purchased and wired on their behalf.

40. Beginning from 2005 to in or about March 2012 when Claimants became aware of the restrain of the BOA Account, Claimants used Buyers, including Abubakar Lado Ibrahim, to purchase and wire foreign currency to Claimants foreign accounts. Claimants have paid in local currency for each and every foreign currency purchased and wired on their behalf by the Buyers.

41. It was Claimants arrangement with the Buyers that whenever Claimants needed foreign currency or the Buyers had foreign currency to sell, the Buyers should wire or pay the foreign exchange into one of Claimants' foreign account, including the BOA Account and Claimants will pay the Buyers the equivalent in local currency once Claimants confirms receipt of the deposit or wire into their account.

## THE BANK OF AMERICA ACCOUNT NO. XXXXXXXX7424

42. In or about August 2004, while visiting the United States, Claimants opened the BOA Account for personal use and for their business purposes. Claimants opened the BOA Account at the Bank of America branch in Orlando, Florida, USA.

43. Since opening the BOA Account in 2004, Claimants have not withdrawn, wired or transferred any money from the BOA Account outside of the United States.  All withdrawals and/or transfers from the BOA Account are traceable and are for Claimants legitimate business or personal purposes, mostly for payment of purchases to Blount International, Inc.

44. All deposit or wire into the BOA Account has been legitimately made by the Claimants and/or are foreign currency purchased and paid for by Claimants to the Buyers. To facilitate the foreign currency wire as stated in paragraphs 39-41 above, Claimants gave the Buyers their foreign account information, including the BOA Account. Other than the Buyer, Claimants did not give the BOA Account information to any other person.

45. From 2010 to 2012, Claimants purchased and paid the Buyers for foreign currency in excess of $21,000,000.00 to be wired or deposited by the Buyers to Claimants foreign accounts, including the BOA Account. All payments to the Buyers for the foreign currency purchased from and wired by the Buyers to Claimants foreign accounts, including the BOA Account, were made by Claimants either by checks, drafts, or transfer issued or made through Claimants and/or their business bank account(s) in Nigeria.

### CLAIMANTS ACTIONS SINCE BEING NOTIFIED OF THE SEIZURE OF THE BOA ACCOUNT

46. On or about February 2012, Claimants were informed by Bank of America that the BOA Account has been restrained, followed by an email from special agent Michael Shove confirming that the BOA Account has been seized and of the Plaintiff's intention to apply for forfeiture due to an alleged illegal transfer or deposit of $194,340.00 into the BOA Account.

47. Claimants several attempts through Bank of America and/or agent Shove to find out the reason for the seizure and intended forfeiture of the BOA Account has been unsuccessful, until on or about late 2012 when Claimants were able to secure the Affidavit and Application for Civil Seizure Warrants.

48. Prior to March 2012, Claimants are unaware that the Buyers may have been buying foreign currency from individuals based in the United States for some of the foreign currency sold to Claimants, and not buying all of them from the Nigerian Autonomous Foreign Exchange Market.

49. Prior to the seizure of the BOA Account, Claimants are without knowledge and had no reason to believe that their account was being used or misused by the Buyers or any other person.

Claimants have no knowledge of any connection between the BOA Account and the alleged illegal activity. Since becoming aware, Claimants have taken every necessary step to stop any further use of BOA Account and to have the Buyers answer for their activity, including:

    (a)    Claimants immediately stop using the Buyers for their foreign exchange transactions;

    (b)    Claimants filed a report and complaint with the office of the Inspector General of the Nigerian Police Force; and

    (c)    Claimants reported the Buyers and their activities to Nigerian State Security Services;

50.    Upon Claimants complaint and report, the Buyers were arrested by the Nigerian Police, and Claimants have been informed by the Nigerian Police that it has filed a preliminary report with the United States Embassy in Nigeria, pending final investigation.

### FIRST AFFIRMATIVE DEFENSE

51.    Plaintiff's claim that Claimants violated 18 U.S.C. § 1343, which subjected the defendant property to this civil forfeiture pursuant to 18 U.S.C. 981(a)(1)(C), is a claim upon which relief cannot be granted in this case because the Claimants were engaged in a legal international business enterprise that was necessarily conducted primarily through foreign currency transfers.

### SECOND AFFIRMATIVE DEFENSE

52.    Plaintiff's claim that Claimants violated 18 U.S.C. § 1956 (a)(1)(A)(i), which subjected the defendant property to this civil forfeiture pursuant to 18 U.S.C. 981(a)(1)(A), is a claim upon which relief cannot be granted in this case because Claimants were engaged in a legal business enterprise that did not involve money laundering activities.

### THIRD AFFIRMATIVE DEFENSE

53.    Claimants acted in good faith at all times relevant to the Complaint.

### FOURTH AFFIRMATIVE DEFENSE

54.    Plaintiff is estopped from pursuing this civil forfeiture action because it has failed to conduct an adequate investigation and filed its Complaint without sufficient prior analysis of the facts or understanding of Claimants business and purchases of foreign exchange.

**FIFTH AFFIRMATIVE DEFENSE**

55.     Claimants, as innocent owners, did not know, or have reason to know, that the property in question was being employed or was likely to be employed in criminal activity.

**WHEREFORE**, having answered the Verified Complaint, the Claimants pray that the Court will:

a.   Impanel a jury for the trial of this matter;

b.   Dismiss the Government's Complaint and enter judgment on behalf of the Claimants; and

c.   Grant such other and further relief as the Court deems proper and just.

Dated: Brooklyn, New York
       June 13, 2013.

        **NNEBE & ASSOCIATES, P.C.**

        /s/Okechukwu Valentine Nnebe
        Okechukwu Valentine Nnebe (phv06105)
        255 Livingston Street, 3rd Floor
        Brooklyn, New York 11217
        Tel. No.: (718) 360-5808
        Fax No.: (718) 360-0843
        nnebe@hotmail.com
        *Attorneys for Claimants*

## **VERIFICATION/DECLARATION**

I, Godwin Ezeemo, I am one of the claimants herein, I have read the contents of the foregoing Verified Answer and affirm, under the penalty of perjury pursuant to 28 U.S.C. § 1746, that the contents are not frivolous and are true and correct to the best of my knowledge, information and belief.

Executed on the 13th day of June, 2013.


          /s/Godwin Ezeemo
          Godwin Ezeemo

## **VERIFICATION/DECLARATION**

I, Winifred C. N. Ezeemo, I am one of the claimants herein, I have read the contents of the foregoing Verified Answer and affirm, under the penalty of perjury pursuant to 28 U.S.C. § 1746, that the contents are not frivolous and are true and correct to the best of my knowledge, information and belief.

Executed on the 13th day of June, 2013.

                                      /s/Winifred C. N. Ezeemo
                                        Winifred C. N. Ezeemo

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 14, 2013, a copy of foregoing Notice of Appearance was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

    //s/Okechukwu Valentine Nnebe
Okechukwu Valentine Nnebe (phv06105)
255 Livingston Street, 3rd Floor
Brooklyn, New York 11217
Tel. No.: (718) 360-5808
Fax No.: (718) 360-0843
nnebe@hotmail.com