UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA, :
:
    Plaintiff, :
:
    v. : CASE NO. 3:13CV545(DFM)
:
$822,694.81 IN UNITED STATES :
CURRENCY, SEIZED FROM ACCOUNT :
NO. XXXXXXXX7424, HELD IN THE :
NAMES OF GODWIN EZEEMO AND :
WINIFRED C.N. EZEEMO, AT BANK :
OF AMERICA, :
:
    Defendant. :

RULING ON MOTION FOR SUMMARY JUDGMENT

    The United States of America commenced this civil forfeiture action seeking forfeiture of $822,694.81 in a Bank of America account in the names of Godwin and Winifred Ezeemo (the "Ezeemos").[1] The government alleges that the $822,694.81 (the

---

[1]Section 981 of Title 18 of the U.S. Code authorizes civil forfeiture of property "involved in," "derived from," or "traceable to" a variety of specified federal crimes. 18 U.S.C. § 981(a)(1). "In a civil forfeiture case, the government is the plaintiff, the property is the defendant and the claimant is an intervenor seeking to challenge the forfeiture." Stefan D. Casella, Asset Forfeiture Law in the United States at 374 (2d ed. 2013). See United States v. One-Sixth Share, 326 F.3d 36, 40 (1st Cir. 2003)("Because civil forfeiture is an in rem proceeding, the property subject to forfeiture is the defendant. Thus, defenses against the forfeiture can be brought only by third parties, who must intervene."); United States v. All Funds in Account Nos. 747.034/278 in Banco Espanol de Credito, Spain 295 F.3d 23, 25 (D.C. Cir. 2002) ("Civil forfeiture actions are brought against

"defendant currency") is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), because it is the product of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), or pursuant to 18 U.S.C. § 981(a)(1)(C), because it is the product of wire fraud or conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343. (ECF #1, Verified Compl. ¶6.) The Ezeemos contest the government's forfeiture action. They do not dispute that certain deposits to the BOA account were obtained by fraud but maintain that they were not aware of the fraud. Pursuant to Fed. R. Civ. P. 56, the Ezeemos move for summary judgment as to the government's forfeiture action. (ECF #119.) For the reasons that follow, the motion is denied.

I. Legal Standard

"A moving party is entitled to summary judgment where the record reveals 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(a)." Natofsky v. City of New York, 921 F.3d 337, 344 (2d Cir. 2019). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

---

property, not people. The owner of the property may intervene to protect his interest.")

2

248 (1986). "The evidentiary standard that must be met by the moving party is a high one, since a court is obliged 'to draw all inferences in favor of the party against whom summary judgment is sought,' Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989), and to 'construe the evidence in the light most favorable to the nonmoving party,' United States v. All Funds Distributed to Weiss, 345 F.3d 49 (2d Cir. 2003)." United States v. Collado, 348 F.3d 323, 327 (2d Cir. 2003).

The government did not file a memorandum in opposition in response to the Ezeemos' summary judgment motion. The Second Circuit has made clear, however, that a district court may not grant a motion for summary judgment "without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." Id. (internal quotation marks omitted). See Giannullo v. City of New York, 322 F.3d 139, 141 (2d Cir. 2003)(noting that the "non-movant is not required to rebut an insufficient showing"). "Moreover, in determining whether the moving party has met this burden of showing the absence

of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." Vermont Teddy Bear Co., 373 F.3d at 244; Giannullo, 322 F.3d at 143 n. 5 (stating that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

II. Background

The following facts, taken from the Ezeemos' Local Rule 56(a)1 statement (ECF #119-2) and supporting exhibits (ECF #119-4 – #119-43), are undisputed unless otherwise indicated.

The Ezeemos are Nigerian citizens who operate businesses in Nigeria. (ECF #119-2[2], Local Rule 56(a)1 ¶6; ECF #119-42 at 5.) As part of their business, they purchase goods from Blount International, a U.S. company in Oregon, for resale in Western Africa. (ECF #119-2, Local Rule 56(a)1 ¶16.) They maintain bank accounts in Nigeria. (ECF #119-4, Ezeemo Dep. at 40.) They also have a joint checking account at Bank of America ("BOA"). (ECF #119-2, Local Rule 56(a)1 ¶37.) The BOA account initially was a

---

[2]Citations are to ECF-generated page numbers found at the top of the documents.

4

personal checking account. (ECF #119-5, Ezeemo Dep. at 17.) The Ezeemos subsequently used the account to purchase U.S. currency. (ECF #119-5, Ezeemo Dep. at 19.) They wanted U.S. dollars to pay their U.S suppliers. (ECF #119-4, Ezeemo Dep. at 14-15, #119-5, Ezeemo Dep. at 19.)

To procure U.S. currency, Godwin Ezeemo contacted an individual named Abubaker Lade ("Lade") in Lagos, Nigeria. (ECF #119-4, Ezeemo Dep. at 15.) Lade worked in Lagos as a "marketer" for a local Nigerian Bureau de Change that handles private foreign currency transactions. (ECF. #119-7, Lade Dep. at 66.) Lade testified that he was unlicensed, although Ezeemo testified to the contrary. (ECF #119-7, Lade Dep. at 65-66.) Lade's job was to obtain customers for the Bureau de Change. (ECF #119-7, Lade Dep. at 66.) To do so, he went "outside" to the local "market" and "warehouse." (ECF #119-7, Lade Dep. at 68.) Godwin Ezeemo used a Bureau de Change to obtain U.S. dollars because he was able to move more money more quickly than he would if he used a bank. (ECF #119-4, Ezeemo Dep. at 16; ECF #119-5, Ezeemo Dep. at 14.)

Ezeemo ordered "bulk" purchases of U.S. dollars – such as $500,000 - from Lade. (Doc. #119-5, Ezeemo Dep. at 54.) They negotiated the exchange rate. (ECF #119-7, Lade Dep. at 110-11.) Ezeemo gave Lade the BOA account information so Lade could make deposits/wire the U.S. dollars into the account. (ECF #119-2,

5

Local Rule 56(a)1 ¶48.) Lade gave the Ezeemos' BOA account information to others. (ECF #119-7, Lade Dep. at 13.) Over time Lade caused deposits in varying amounts to be made into the Ezeemos' BOA account. (ECF #119-5, Ezeemo Dep. at 21-22.) Lade gave Godwin Ezeemo the wire confirmation receipt and/or deposit slip for every wire transfer or deposit into the BOA account. (ECF #119-2, Local Rule 56(a)1 ¶51.) After Godwin Ezeemo saw the online confirmation of payment into his BOA account, he paid Lade in naira (Nigerian currency) for each transaction. (ECF #119-2, Local Rule 56(a)1 ¶53.) The Ezeemos used the U.S. currency that was deposited in the BOA account to pay for their purchases from Blount. (ECF #119-41, Ezeemo Aff. ¶18.)

Godwin Ezeemo did not know how Lade obtained the funds that were deposited into the BOA account. (ECF #119-5, Ezeemo Dep. at 22.) When Ezeemo reviewed his account, it showed wire transfers from various individuals, none of whom Ezeemo knew. (ECF #119-5, Ezeemo Dep. at 26.) Ezeemo did not know where the money came, nor did he know the identity of those depositing it. Indeed, he stated that he could not "be bothered with who pays this money into my account" and "d[id] not query Lade on how he does his business." (ECF #119-5, Ezeemo Dep. at 26, 28, 31.) He knew that Lade caused the transfers because the "confirmation slip that comes from him tells the proof." (ECF #119-5, Ezeemo Dep. 27.)

6

Some of the money deposited into the BOA account was obtained fraudulently.³ The victims were subject to different types of scams but all were tricked into putting money into the BOA account.⁴ (ECF. #119-1 at 16.) U.S. Secret Service Agent Michael Shove investigated the deposits made into the BOA account. (ECF #119-2, Local Rule 56(a)1 at ¶58.)⁵

One victim was a law firm. On February 9, 2012, the law firm of Weycer, Kaplan, Pilaski and Zuber (the "Weycer law firm") wired $194,340 into the BOA account. (ECF #119-5, Ezeemo Dep. at 41.) After the transfer, Ezeemo could not access his account. (ECF #119-5, Ezeemo Dep. at 41.) He called BOA and was told his account was frozen because the $194,340 transfer was fraudulent. (ECF #119-5, Ezeemo Dep. at 42, 65, 75, 78.) Ezeemo stopped using Lade to obtain foreign currency and authorized his attorney to make a

---

³Some of the alleged fraud victims intervened in this action to contest the government's forfeiture. Doc. ##47, 55, 64, 65.

⁴For example, several transfers to the BOA account were from "Leon Wu," whom Ezeemo testified he did not know. (ECF #119-5, Ezeemo Dep. 27.) Wu claims he was duped into transferring money into the Ezeemos' BOA account. According to Wu, he had an online relationship in 2011 with a woman named "Salerno Joan," who purported to live in London. Salerno told Wu that she had inherited $60 million and wanted to move to the United States, marry him, and share her inheritance. But first Salerno needed Wu to pay "fees" to help Salerno obtain the inheritance. In response, Wu wired – in various increments – more than $500,000 into the Ezeemos' BOA account. Salerno never came to the United States, shared any inheritance or returned the money to Wu. (ECF #1 at 13.)

⁵The government alleges eight victim losses in its complaint.

7

complaint against Lade with the Nigerian Police. (ECF #119-5, Ezeemo Dep. at 47.) The March 1, 2012 police report stated that the basis for the complaint was "fraudulent deceitful transfer of $194,340 to the account of Mr. Ezeemo." (ECF #119-5, Ezeemo Dep. at 92; ECF #119-17 at 3.) Lade was arrested but not charged with a crime and released. (ECF #119-7, Lade Dep. at 101.)

Notwithstanding that the account was "frozen" after the $194,340 wire transfer by the Weycer law firm, the Ezeemos continued to use the account. Transfers into the account continued, including one for $154,210.86 and another for $40,000, both by persons and entities the Ezeemos did not know.[6] (ECF #119-5, Ezeemo Dep. at 59-60, ECF #119-6, W. Ezeemo Dep. at 29.)

On March 23, 2012, the government seized the defendant currency and thereafter filed this civil forfeiture action. The Ezeemos concede that "several people were defrauded by a scam" but maintain that they had no knowledge of any fraud and that they legally purchased the U.S. currency. (ECF #119-1 at 16.)

III. Discussion

A. Criminal Liability

The Ezeemos first argue that they are entitled to summary

---

[6]These transfers were made on March 15, 2012 by Bank of New Canaan and Deborah Stuckey, respectively. (ECF #119-5, Ezeemo Dep. at 59.) Both claim that they were tricked into making the transfers. (ECF #1, ¶¶17-18.)

8

judgment on the government's forfeiture action because they did not violate the underlying criminal statutes prohibiting wire fraud or money laundering. (Doc. #119-1 at 7-12.) Their argument fails.

Civil forfeiture proceedings are governed by 18 U.S.C. § 983. Section 983(c) provides that "[i]n a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property . . . the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." "In civil forfeiture, the United States brings a civil action against the property itself as an in rem proceeding — '[i]t is the property which is proceeded against, and . . . held guilty and condemned as though it were conscious instead of inanimate and insentient.' . . ." United States v. Contorinis, 692 F.3d 136, 146 (2d Cir. 2012)(citations omitted). The "claimant's culpability in the underlying criminal conduct is irrelevant." United States v. $6,207, 757 F. Supp.2d 1155, 1163 (M.D. Ala. 2010). See United States v. Cherry, 330 F.3d 658, 666 n.16 (4th Cir. 2003) ("The most notable distinction between civil and criminal forfeiture is that civil forfeiture proceedings are brought against property, not against the property owner; the owner's culpability is irrelevant in deciding whether property should be forfeited."); Vereda, Ltda. v. United States, 271 F.3d

1367, 1376 (Fed. Cir. 2001)("in an in rem forfeiture . . . the guilt or innocence of the property owner is irrelevant in view of the fact that the action resulting in forfeiture is 'directed against [the] guilty property, rather than against the offender himself'"); United States v. $90,000.00 in U.S. Funds, No. 5:12-CV-169(CAR), 2012 WL 5287888, at *3 (M.D. Ga. Oct. 23, 2012)("A civil forfeiture action is a proceeding in rem and operates under the legal fiction that objects and property can be guilty of wrongdoing, making any actual guilt related to the owner irrelevant."); United States v. A Parcel of Land Located at 5185 S. Westwood Drive Republic, Mo., No. 09-03357-CV-S-DGK, 2012 WL 1113197, at *4 (W.D. Mo. Apr. 2, 2012) ("Civil forfeiture is an in rem action against the property itself, not the person. Therefore, civil forfeiture is 'not conditioned upon the culpability of the owner of the defendant property.' Essentially, 'the innocence of the owner is irrelevant.'")(citation omitted); Stefan D. Cassella, Asset Forfeiture Law in the United States 503 (2d ed. 2013)("The claimant's lack of personal involvement in the crime giving rise to the forfeiture is irrelevant . . . .").

B.  Innocent Owner Defense

The Ezeemos next argue that they are entitled to summary judgment on their affirmative defense of innocent ownership pursuant to 18 U.S.C. § 983(d).

10

Section 983(d)(1) provides: "An innocent owner's property shall not be forfeited under any civil forfeiture statute."[7] "An innocent-owner defense is an affirmative defense to be proven by the claimant by a preponderance of the evidence." United States v. All Assets of G.P.S. Auto. Corp., 66 F.3d 483, 487-88 (2d Cir. 1995).

"Section 983 provides for two categories of innocent owners." In re 650 Fifth Ave. & Related Properties, No. 08 CIV. 10934(KBF), 2014 WL 1998233, at *4 (S.D.N.Y. May 15, 2014). The first category, § 983(d)(2)(A), governs claimants with pre-existing ownership interests and "comprises owners whose property interests were in existence 'at the time the illegal conduct giving rise to forfeiture took place.'" In re 650 Fifth Ave. & Related Properties, 2014 WL 1998233, at *4-5 (quoting 18 U.S.C. § 983(d)(2)(A)). The second category, § 983(d)(3)(A), "comprises owners who acquired their property interests 'after the conduct giving rise to the forfeiture took place.'" Id. (quoting 18 U.S.C. § 983(d)(3)(A)). See United States v. Real Prop. Located at 6124 Mary Lane Drive, San Diego, California, No. 3:03CV580, 2008 WL 3925074, at *2 (W.D.N.C. Aug. 20, 2008)("The conditions one must

---

[7]The statute defines an "owner" as "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest." 18 U.S.C. § 983(d)(6)(A).

meet to be an innocent owner depend on whether the claimant's property interest was acquired before or after the illegal conduct giving rise to the forfeiture took place.")

1. <u>18 U.S.C. § 983(d)(2)(A) - Pre-Existing Property Interest</u>

The Ezeemos first argue that they are entitled to summary judgment pursuant to § 983(d)(2)(A). Section 983(d)(2)(A) provides:

> With respect to a property interest in existence at the time the illegal conduct giving rise to forfeiture took place, the term "innocent owner" means an owner who--
> (i) did not know of the conduct giving rise to forfeiture; or
> (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property.

The Ezeemos' § 983(d)(2) argument fails. As indicated, § 983(d)(2) concerns "pre-existing" ownership interests, that is, ownership interests in existence at the time of the underlying criminal offense.[8] "[E]very claimant asserting an affirmative

---

[8] See, e.g., <u>United States v. An Interest in the Real Prop. Located at 2101 Lincoln Blvd., Los Angeles, Cal.</u>, 729 F. Supp. 2d 1150, 1154-55 (C.D. Cal. 2010) (§ 983(d)(2) governs "a case where the claimant already owns a piece of property"); <u>United States v. A 2000 Jeep Grand Cherokee, VIN. No. 1J4GW48N7YC303169, License No. 70-J870</u>, No. 07-CV-4114-DEO, 2009 WL 1586016 (N.D. Iowa June 4, 2009)(where mother owned the vehicle prior to her son's use of it in criminal activity, her ownership interest was "in existence" at the time the property was used to commit underlying offense); <u>United States v. Real Prop. Known & Numbered as 2621 Bradford</u>

defense under section 983(d)(2) must begin by establishing that he was an owner of the property at the time the offense giving rise to the forfeiture took place." Stefan D. Cassella, Asset Forfeiture Law in the United States 499 (2d ed. 2013). Claims under § 983(d)(2) fail "if the claimant did not acquire his interest in the forfeited property until after the crime giving rise to the forfeiture took place." Id. at 497. The Ezeemos failed to brief, much less establish, how their ownership interest in the defendant currency was "in existence at the time the illegal conduct giving rise to forfeiture took place." § 983(d)(2)(A). "A person who cannot satisfy this temporal requirement has no claim under Section 983(d)(2) . . . ." Stefan D. Cassella, Asset Forfeiture Law in the United States 496 (2d ed. 2013).

Even assuming that the Ezeemos could make this showing, their claim under § 983(d)(2) still fails.

Section 983(d)(2)(A)(i) requires an owner prove that he "did not know of the conduct giving rise to forfeiture." The Ezeemos

---

Drive, Middletown, Butler Cty., Ohio, No. 1:07-CV-875, 2008 WL 11402027, at *4 (S.D. Ohio Aug. 12, 2008)(where claimant owned the defendant property since 1995, his "property interest arose prior to the illegal activity"); United States v. 392 Lexington Parkway S., St. Paul, Minn., Ramsey Cty., 386 F. Supp. 2d 1062, 1070 (D. Minn. 2005) (claimant asserted that it was an innocent owner pursuant to § 983(d)(2)(A) where it closed on its mortgage on November 13, 2002, prior to the illegal conduct giving rise to the forfeiture).

argue they are entitled to judgment as a matter of law pursuant to this provision because there is no "evidence that [they] had any knowledge of the unlawful activity." (Doc. #119-1 at 14.) In support, the Ezeemos point to their deposition testimony and affidavits disavowing any knowledge that the U.S. currency was obtained by fraud. (ECF #119-1 at 14, citing to ECF ##119-2, Local Rule 56(a)1 ¶¶54-57.)

Knowledge under § 983(d)(2)(A)(i) "includes the concept of 'willful blindness'." Stefan D. Cassella, The Uniform Innocent Owner Defense to Civil Asset Forfeiture, 89 Ky. L.J. 653, 684 (2001). An owner of property is not entitled to an innocent owner defense to forfeiture by being willfully blind to the facts that gave rise to the forfeiture. United States v. Collado, 348 F.3d 323, 327 (2d Cir. 2003) (stating that the court has "construed the 'knowledge' prong broadly such that "where an owner has engaged in 'willful blindness' as to the activities occurring on her property, her ignorance will not entitle her to avoid forfeiture.") See United States v. $ 38,148.00 United States Currency, No. 13-CV-1162A(F), 2018 WL 2091415, at *8 (W.D.N.Y. Apr. 12, 2018) ("A claimant's willful blindness, however, will not avoid forfeiture"); United States v. $175,121.75 in Wells Fargo Bank Funds, No. CV 15-7149-R, 2016 WL 7655746, at *3 (C.D. Cal. June 21, 2016) ("Innocent owner defenses have consistently been

14

rejected in forfeiture cases where the claimant was found to be willfully blind"); <u>United States v. Funds Seized From Account No. 20548408 at Baybank, N.A.</u>, No. 93 CIV. 12224(MEL), 1995 WL 381659, at *6 (D. Mass. June 16, 1995)("In the context of an 'innocent owner' defense, willful blindness . . . is tantamount to knowledge"); <u>United States v. All Funds Presently on Deposit</u>, 832 F. Supp. 542, 564 (S.D.N.Y. 1993) (To be an innocent owner, "[a] claimant must demonstrate by a preponderance of the evidence that it did not . . . have knowledge of the illegal activities and was not willfully blind to those activities.")  Regarding whether a claimant knew of the conduct giving rise to forfeiture, ordinarily "[m]atters of knowledge and willful avoidance of knowledge are questions of fact." <u>United States v. Milbrand</u>, 58 F.3d 841, 844 (2d Cir. 1995).

To prevail on their affirmative innocent owner defense, the Ezeemos bear the burden of showing they did not know of the illegal activity.  Construed in the light most favorable to the nonmoving party, the Ezeemos' submissions fall short.  Godwin Ezeemo purchased significant amounts of U.S. currency from a local man who testified that he was not licensed and gathered customers by going "outside" to the "market" and "warehouse" in Lagos.  (ECF #119-7, Lade Dep. at 68.)  Although Ezeemo was aware of the many deposits into his BOA account by individuals and entities whom he

15

did not know, he never questioned the source of the money. Despite the presence of these red flags, the Ezeemos did nothing to investigate the legitimacy of the funds deposited in the account.[9] Viewing the record evidence in the light most favorable to the nonmoving party, genuine issues of material fact exist as to whether the Ezeemos were willfully blind to the fraudulent activity. See United States v. 16328 S. 43rd E. Ave., Bixby, Tulsa Cty., Okla., 275 F.3d 1281, 1284 (10th Cir. 2002)(explaining that the court need not accept "bare denials" where the claimant's "alleged ignorance amounts to willful blindness").

The Ezeemos next argue that they are entitled to summary judgment pursuant to § 983(d)(2)(A)(ii). Section 983(d)(2)(A)(ii) provides that an innocent owner is an owner who "upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." Section 983(d)(2)(B)(i) further states that:

> [W]ays in which a person may show that such person did all that reasonably could be expected may include demonstrating that such person, to the extent permitted by law—
>
> > (I) gave timely notice to an appropriate law enforcement agency of information that led the person to know the conduct giving rise to a forfeiture would occur or has occurred; and

---

[9]In the words of Secret Service agent Shove, Ezeemo "turned a blind eye to the source of the funds." (Doc. #119-8, Shove Dep. at 64.)

16

> (II) in a timely fashion revoked or made a good faith attempt to revoke permission for those engaging in such conduct to use the property or took reasonable actions in consultation with a law enforcement agency to discourage or prevent the illegal use of the property.

18 U.S.C. § 983(d)(2)(B)(i).

The Ezeemos make a passing argument that they satisfy § 983(d)(2)(A)(ii) because after they were told that the $194,340 transfer was fraudulent, they "stopped using Lade" to obtain U.S. currency and "wrote a complaint to the Nigerian police against Lade which resulted in Lade's arrest." (Doc. #119-1 at 14.)

The Ezeemos fail to sustain their burden of demonstrating that they are innocent owners pursuant to § 983(d)(2)(A)(ii). The record reveals that the Ezeemos' complaint to the Nigerian police referred only to the $194,340 deposit. Notwithstanding that Lade had caused numerous other deposits into the BOA account, the Ezeemos took no action to investigate the source or legality of those deposits. Even after they reported Lade, the Ezeemos continued to use the BOA account and received additional questionable deposits into the account from sources they did not know. (ECF #119-5, Ezeemo Dep. at 59-60.) Viewing the evidence in the light most favorable to the nonmovant, genuine issues of material fact exist regarding whether the Ezeemos "did all that reasonably could [have] be[en] expected under the circumstances to

terminate such use of the property." 18 U.S.C. § 983(2)(A)(ii). See United States v. Property Identified as 1813 15th Street N.W., Washington D.C., 956 F. Supp. 1029, 1037 (D.D.C. 1997)(under § 983(2)(A)(ii), "the claimant must supply evidence to allow a reasonable juror to conclude that, under the circumstances, all reasonable steps were taken to curtail the illegal activity . . . . [E]vidence to prove *some* reasonable steps were taken is insufficient . . . .")(emphasis in original).

   2.   18 U.S.C. § 983(d)(3)(A) – After-Acquired Property Interest

The Ezeemos next argue that they are entitled to summary judgment on their innocent owner defense pursuant to § 983(d)(3)(A), which governs after-acquired property interests. Section 983(d)(3)(A) provides:

> With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term "innocent owner" means a person who, at the time that person acquired the interest in the property--
> (i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and
> (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture.

18 U.S.C. § 983(d)(3)(A).

The Ezeemos argue that they "paid the equivalent in Nigerian currency for each and every dollar deposited in the BOA account"

18

and "did not know that the BOA Account was [sic] been used in a criminal activity." (Doc. #119-1 at 18.)

The court need not address the first element of the defense because the Ezeemos fail to satisfy the required second element of the defense that they "did not know and [were] reasonably without cause to believe that the property was subject to forfeiture." § 983(d)(3)(A)(ii). This section "requires that the innocent owner be ignorant of the fact that the property was involved in or traceable to a criminal violation." United States v. An Interest in the Real Prop. Located at 2101 Lincoln Blvd., Los Angeles, Cal., 729 F. Supp. 2d 1150, 1154 (C.D. Cal. 2010). The test is an "objective" one. United States v. Real Prop. Located at 6124 Mary Lane Drive, San Diego, California, No. 3:03CV580, 2008 WL 3925074, at *4 (W.D.N.C. Aug. 20, 2008), aff'd sub nom. United States v. Munson, 477 F. App'x 57 (4th Cir. 2012). "The reason-to-believe standard is an objective one: even a genuinely-held belief that the property was not subject to forfeiture will be insufficient if a reasonable person would have been on notice that the property could be forfeited to the government." Stefan D. Cassella, Asset Forfeiture Law in the United States 512 (2d ed. 2013). And as with § 983(d)(2)(A)(i), a claimant asserting a defense under § 983(d)(3)(A) "cannot rely on 'willful blindness' to support his lack of knowledge." United States v. 2003 Lamborghini Murcielago,

19

No. 6:07CV726ORL-19KRS, 2007 WL 4287674, at *5 (M.D. Fla. Dec. 6, 2007). See United States v. $175,121.75 in Wells Fargo Bank Funds, No. CV 15-7149-R, 2016 WL 7655746, at *2 (C.D. Cal. June 21, 2016)(claimant's innocent owner claim under § 983(d)(3)(A) failed where claimant was "willfully blind" and "had a definitive reason to believe that the money was subject to forfeiture").

For the reasons set forth in the court's discussion of § 983(d)(2)(A)(i) regarding the Ezeemos' knowledge, supra at 15-16, the Ezeemos fail to establish that no issue of material fact exists as to whether they "did not know, and [were] reasonably without cause to believe, that the property was subject to forfeiture."

IV. Conclusion

Accordingly, the Ezeemos' motion for summary judgment (ECF #119) is DENIED.

SO ORDERED at Hartford, Connecticut, this 11th day of September, 2019.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge