```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


UNITED STATES OF AMERICA,      :
                               :
     Plaintiff,                :
                               :
     v.                        :    CASE NO. 3:13CV545(DFM)
                               :
$822,694.81 IN UNITED STATES   :
CURRENCY, SEIZED FROM ACCOUNT  :
NO. XXXXXXXX7424, HELD IN THE  :
NAMES OF GODWIN EZEEMO AND     :
WINIFRED C.N. EZEEMO, AT BANK  :
OF AMERICA,                    :
                               :
     Defendant.                :
```

RULING ON MOTIONS FOR SUMMARY JUDGMENT

This is a civil forfeiture action filed by the government against $822,694.81 in account funds.[1] On March 23, 2012, the government seized the defendant property from a Bank of America ("BOA") account in the names of Godwin and Winifred Ezeemo (the "Ezeemos"). The government alleges that the $822,694.81 (the "defendant currency") is subject to forfeiture pursuant to 18 U.S.C. § 981[2] because it is the product of money laundering in

---

[1] "In a civil forfeiture case, the Government is the plaintiff, the property is the defendant, and the claimant is an intervenor seeking to challenge the forfeiture action." Stefan D. Cassella, Asset Forfeiture Law in the United States 374 (2d ed. 2013).

[2] Section 981 of Title 18 of the U.S. Code authorizes civil forfeiture of property "involved in," "derived from," or "traceable to" a variety of specified federal crimes. 18 U.S.C. § 981(a)(1).

violation of 18 U.S.C. § 1956(a)(1)(A)(i) or because it is the product of wire fraud in violation of 18 U.S.C. § 1343. (ECF #1, Verified Compl. ¶6.)

Earlier in the case, the law firm of Weycer, Kaplan, Pulaski & Zuber ("Weycer"), Bank of New Canaan n/k/a Bankwell ("Bankwell"), Deborah Stuckey ("Stuckey"), and Leon Li-Heng Wu ("Wu") (hereinafter the "intervenors") intervened to contest the forfeiture alleging that they were victims of the fraud around which the case is centered and have an ownership interest in the defendant currency. Each now moves for summary judgment, seeking as relief a judgment in the amount of its loss: Weycer seeks a judgment in the amount of $194,340 (ECF #136); Stuckey seeks a judgment in the amount of $40,000 (ECF #115); Bankwell seeks a judgment in the amount of $154,210.86 (ECF #150); and Wu seeks a judgment in the amount of $660,000. (ECF #144.)[3] For the reasons that follow, the motions are denied.

I. Legal Standard

"A moving party is entitled to summary judgment where the record reveals 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(a)." Natofsky v. City of New York, 921 F.3d 337, 344 (2d

---

[3]The total of the amounts claimed by the intervenors exceeds the sum in the BOA account.

Cir. 2019). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The evidentiary standard that must be met by the moving party is a high one, since a court is obliged 'to draw all inferences in favor of the party against whom summary judgment is sought,' Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989), and to 'construe the evidence in the light most favorable to the nonmoving party,' United States v. All Funds Distributed to Weiss, 345 F.3d 49 (2d Cir. 2003)." United States v. Collado, 348 F.3d 323, 327 (2d Cir. 2003).

II. Background

The following facts, taken from the parties' submissions, are undisputed unless otherwise noted. (ECF ##115, 136, 137, 144, 146, 150, 151.)

The Ezeemos are Nigerian citizens who operate businesses in Nigeria. They had U.S. suppliers. When Godwin Ezeemo needed United States currency to pay U.S suppliers, he contacted an individual named Abubaker Lade ("Lade") in Lagos, Nigeria. Lade worked in Lagos as a "marketer" for a local Nigerian Bureau de Change that handles private foreign currency transactions. Godwin Ezeemo used a Bureau de Change to obtain U.S. dollars because he

3

was able to move more money more quickly than he would if he used a bank. (ECF #147-4, Ezeemo Dep. at 14.)

Ezeemo ordered from Lade "bulk" purchases of U.S. dollars such as $500,000 at a time. They negotiated the exchange rate. Ezeemo gave Lade the BOA account information so Lade could deposit or wire the U.S. dollars into the Ezeemo account. Lade shared the Ezeemos' BOA account information with others. Over time, Lade caused many deposits in varying amounts to be made into the Ezeemos' BOA account. Lade gave Godwin Ezeemo the wire confirmation receipt and/or deposit slip for every wire transfer or deposit into the BOA account. After Godwin Ezeemo saw the online confirmation of payment into his BOA account, he paid Lade in naira (Nigerian currency) for each transaction. The Ezeemos used the U.S. currency that was deposited into the BOA account to pay for their purchases from U.S companies.

According to Godwin Ezeemo, he did not know how Lade obtained the funds that were deposited into the Ezeemos' BOA account. When Ezeemo reviewed his account, it showed wire transfers from various individuals, none of whom Ezeemo knew. Ezeemo did not know the source of the money nor did he know the identities of the people making deposits.

Some of the money deposited into the BOA account was obtained fraudulently.

Wu

Wu claims he was duped into transferring money into the Ezeemos' BOA account. According to Wu, he had an online relationship in 2011 with a woman named "Salerno Joan," who purported to live in London. Salerno told Wu that she had inherited $60 million and wanted to move to the United States, marry him, and share her inheritance. But first Salerno needed Wu to pay "fees" to help Salerno obtain the inheritance. In response, Wu wired – in various increments – $660,000 into the Ezeemos' BOA account.[4] Salerno never came to the United States, shared any inheritance, or returned the money to Wu. (ECF #1 at 13.)

Weycer

Weycer asserts it too is a fraud victim. In February 2012, a person holding himself out as a mortgage broker contacted Weycer seeking representation to recover a defaulted loan. The purported broker furnished Weycer with a CitiBank check payable to the firm in the amount of $195,340. He told Weycer that the check was a

---

[4]Wu's wire transfers to the BOA account were as follows:
| Date | Amount |
|---|---|
| July 8, 2011 | $10,000 |
| July 15, 2011 | $50,000 |
| July 28, 2011 | $100,000 |
| August 2, 2011 | $100,000 |
| August 22, 2011 | $120,000 |
| September 20, 2011 | $70,000 |
| October 4, 2011 | $60,000 |
| October 24, 2011 | $150,000 |

(ECF #145 at 3.)

partial payment on the defaulted loan and directed the firm to keep $1,000 as a retainer and forward the remaining $194,340 to a Bank of America account. That account was the Ezeemos' BOA account. Weycer deposited the check into its Amegy Bank trust account and on February 9, 2012 wired $194,340 to the BOA account as instructed. The next day, a representative of Amegy Bank notified Weycer that the $195,340 check was fraudulent. Weycer was unable to recall the money it transferred to the BOA account.

### Stuckey

Stuckey also alleges she was scammed. On March 1, 2012, Stuckey received an email from "Jimmy Keller" informing Stuckey that she had won a $750,000 lottery. To claim her prize money, Stuckey was told, she needed to wire transfer $40,000 to a Bank of America account in the name of G. Ezeemo. On March 14, 2012, Stuckey transferred the money to the BOA account as instructed. (ECF #115-6.)

### Bankwell

Bankwell alleges that someone impersonated one of its clients and, posing as that client, requested a number of wire transfers. On March 15, 2012, Bankwell transferred $154,210.86 to the BOA account.

### The Seizure

On March 23, 2012, the government seized the defendant currency. The government thereafter filed this civil forfeiture action alleging that Wu, Weycer, Stuckey, Bankwell, and other victims were duped into transferring funds into the BOA account and that the funds in the BOA account were the product of fraud. The Ezeemos contest the forfeiture and filed a statement of interest in the property. They concede that "several people were defrauded by a scam" but maintain that they are innocent owners under 18 U.S.C. § 983(d)[5] because they had no knowledge of any fraud and legally purchased the U.S. currency that was deposited into their BOA account. (ECF #119-1 at 16.)

### III. Procedural History

In October 2014, Weycer filed a motion to intervene pursuant to Fed. R. Civ. P. 24(a)(2).[6] (ECF #35.) Over objection (ECF #38

---

[5]Section 983(d), entitled "Innocent owner defense," provides that "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence." 18 U.S.C. § 983(d)(1).

[6]Fed. R. Civ. P. 24(a)(2) provides:
(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who . . . :
(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

7

and #40), the court (Chatigny, J.) granted Weycer's motion to intervene, concluding that Weycer had standing to intervene because "Weycer is the beneficiary of a constructive trust in the $194,340 it wired to the Bank of America account" and that this "interest in the funds confers standing to contest forfeiture."[7] (ECF #44.) Subsequently, Stuckey and Bankwell also moved to intervene. (ECF #55, 64.) The government consented to intervention and the court (Chatigny, J.) granted the motions. (ECF ##65, 69.) The government also consented to intervention by Wu.[8] (ECF #65.)

IV. Discussion

Weycer moves for summary judgment "against the Ezeemos and the government," seeking a judgment in the amount of $194,340.[9]

---

[7]The court stated that the "standing inquiry comprises two elements, one constitutional and the other statutory." (ECF #44 at 5.) The court noted there "was no argument that Weycer did not have statutory standing, which depends on compliance with the structures of 18 U.S.C. § 983(a)(4)(A) and Forfeiture Rule G(5)(a)(i), which require a claimant to file a timely verified statement describing his interest in the property." (ECF #44 at 7.) The contested issue was whether Weycer "could establish an interest in the defendant property sufficient to confer Article III standing." (ECF #44 at 6.) "[T]o establish Article III standing, the claimant need only show that he or she has a 'colorable interest' in the property." Stefan D. Cassella, Asset Forfeiture Law in the United States 416 (2d ed. 2013).

[8]The docket reflects that Wu did not file a motion for intervention. For purposes of this ruling only, the court assumes without deciding that Wu has standing.

[9]The government did not file a response to the intervenors' motions for summary judgment. However, Wu filed an opposition to

(ECF #136.) In support of its request, Weycer asserts that there is no genuine issue of material fact that (1) it was defrauded out of $194,340; (2) a constructive trust arose in its favor on February 9, 2012 "which has priority over every other claim in this action"; and (3) the Ezeemos are not innocent owners because Godwin Ezeemo "intended to and did knowingly use his Bank of America account as a repository for stolen and fraudulently obtained funds which include the law firm's clearly traceable $194,340 and was unjustly enriched." (ECF #138 at 7.)

Stuckey also moves for summary judgment. She argues that she "has a constructive trust over the $40,000 at issue and deserves to recover that entire, undisturbed amount." (ECF #115-6 at 7.) In support, she contends that "[t]his court has already determined [she] was entitled to a constructive trust over $40,000," and "[n]o other person has a superior claim." (ECF #115-6 at 11.)

Bankwell argues in its motion for summary judgment that judgment should enter in its favor against the Ezeemos and the government in the amount of $154,210.86. In support of its requested relief, Bankwell asserts that there is no dispute that it was duped out of $154,210.86 and was the "victim of the Ezeemos'

---

each (ECF ##147, 159), as did the Ezeemos. (ECF ##122, 162, 165, 167.)

9

inequitable conduct and fraudulent use of the Bank of America account." (ECF #152 at 15.)

Finally, Wu argues that he is entitled to summary judgment in the amount of $660,000 because "a constructive trust has arisen" as to the funds he "transferred into the scam amount" and because the Ezeemos are not innocent owners. (ECF #145.)

A.  Standing v. Merits

In the pending motions, the intervenors argue that a constructive trust was imposed upon the BOA account in the amount of their loss and ask for their money. This argument is predicated on a misapprehension of Judge Chatigny's ruling on the motions to intervene. The court's ruling was not a decision on the merits of the intervenors' constructive trust claims. The court did not adjudicate ownership of the defendant currency. Rather, in ruling on the motions to intervene, the court determined only that the intervenors had made a sufficient showing of a property interest in the funds to confer standing to challenge the government's forfeiture action. (ECF #44 at 12.) "Standing is a question that determines whether the claimant may properly invoke the jurisdiction of the federal courts to determine the merits of the underlying dispute." United States v. $557,933.89, More or Less, in U.S. Funds, 287 F.3d 66, 78 (2d Cir. 2002). "The function of standing in a forfeiture action is therefore truly threshold only

10

- to ensure that the government is put to its proof only where someone with a legitimate interest contests the forfeiture." Id. at 79. "Thus, the only question that the courts need assess regarding a claimant's standing is whether he or she has shown the required 'facially colorable interest . . . not whether he ultimately proves the existence of that interest." Id. See Brennan v. N.Y.C. Bd. of Educ., 260 F.3d 123, 129 (2d Cir. 2001) ("an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention, but rather turns on whether the applicant has demonstrated that its application is timely, that it has an interest in the subject of the action, that disposition of the action might as a practical matter impair its interest, and that representation by existing parties would not adequately protect that interest.") Accordingly, the intervenors' reliance on Judge Chatigny's ruling as authority for their requested relief is misplaced.

    B.   Competing Ownership Claims

Each of the intervenors asserts that its ownership interest is superior to the other victims[10] and superior to the Ezeemos'

---

[10]In recognition of the fact that the amount sought by the intervenors exceeds the amount of the defendant currency, Wu objects to the other intervenors' motions for summary judgment. He argues that the court should not recognize a constructive trust

interest as well.  The Ezeemos, in turn, vigorously contest the intervenors' ownership claims[11] and contend that the entire contents of the BOA account should be returned to them because they are innocent owners.

"[I]n a civil forfeiture action, the government is the plaintiff, and it is the government's right to forfeiture that is the sole cause of action adjudicated."  <u>United States v. $557,933.89, More or Less, in U.S. Funds</u>, 287 F.3d 66, 79 (2d Cir. 2002).  None of the intervenors address how their competing ownership claims should be resolved.  They cite no relevant legal authority and offer no procedural framework for deciding the priority of their asserted interests within the context of a civil forfeiture action.  More fundamentally, genuine issues of material fact exist as to the rightful ownership of the defendant currency.  <u>See</u> ECF #169.  On the present record, the court is constrained to deny the motions.

V. <u>Conclusion</u>

For these reasons, the motions for summary judgment (ECF #115,

---

because it would result in an equitable result.  Wu contends that "should the defendant currency be ordered forfeited to the United States," a "pro rata distribution" is the "most equitable and fair [result] [for] the defrauded parties/claimants."  (ECF #147 at 2.)

[11]The Ezeemos argue that the intervenors "may have viable claim(s) against the Ezeemos" but that in a civil forfeiture action, intervenors "are limited to contesting forfeiture" to the government.  (ECF #162 at 4 n.2.)

136, 144, 150) are DENIED.

SO ORDERED at Hartford, Connecticut, this 30th day of September, 2019.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge